# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | |
|---|---|
| **TERRENCE J. SMITH** )<br><br>)<br>**Plaintiff,** )<br><br>)<br>**v.** )<br><br>)<br>**CAROLYN W. COLVIN, Acting** )<br>**Commissioner of Social Security,**[1] )<br><br>)<br>**Defendant.** ) | **Case 4:13CV1965NCC** |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the Commissioner's final decision denying the applications of Plaintiff Terrence J. Smith for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U .S.C. §§ 401, et seq., and for supplemental security income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, et seq. The parties have consented to the jurisdiction of the

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, she should be substituted for Michael J. Astrue as the defendant. No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Act.

undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c). (Doc. 18).

# I.
# PROCEDURAL HISTORY

On December 14, 2010, Plaintiff filed his applications for DIB and SSI alleging disability, due to hemophilia, commencing on July 1, 2008. (Tr. 145-46, 152-55, 189). Plaintiff's applications were denied on April 20, 2011, and on April 28, 2011, Plaintiff filed a written request for a hearing before an administrative law judge (ALJ). (Tr. 61-70, 72-73). After a hearing, the ALJ issued a July 27, 2012 decision finding Plaintiff not disabled within the meaning of the Act. (Tr. 19-24). On August 13, 2013, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (Tr. 1-8). Thus, the ALJ's decision stands as the final decision of the Commissioner. 42 U.S.C. § 405(g).[2]

# II.
# LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§

---

[2] On September 19, 2013, Plaintiff filed a subsequent application for SSI, alleging a disability onset date of October 1, 2013. (Doc. 26-1). On April 9, 2014, Plaintiff's subsequent application was approved and he was awarded benefits. (Doc. 26-1).

416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." Id. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); pt. 404, subpt. P, app. 1. If the claimant has one of, or the medical equivalent of, these impairments,

then the claimant is per se disabled without consideration of the claimant's age, education, or work history.  See id.

Fourth, the impairment must prevent the claimant from doing past relevant work.  20 C.F.R. §§ 416.920(f), 404.1520(f).  The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity (RFC).  See Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000).  The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work.  20 C.F.R. §§ 416.920(g), 404.1520(g).  At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC.  See Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5.  If the claimant meets these standards, the ALJ will find the claimant to be disabled.  "The ultimate burden of persuasion to prove disability, however, remains with the claimant."  Id.  See also Harris v.

Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. See Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). In Bland v. Bowen, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> The concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. See Cox, 495 F.3d at 617; Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1993); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. See Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. See Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing

court would have decided differently.  See Krogmeier, 294 F.3d at 1022.  See also Eichelberger, 390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001).

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

Brand v. Sec'y of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980); Cruse v. Bowen, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements." Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A). "While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

(1) the claimant's daily activities;

(2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;

(3) any precipitating or aggravating factors;

(4) the dosage, effectiveness, and side effects of any medication; and

(5) the claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322.

The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. See id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. See Polaski, 739 F.2d at 1322; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. See Guilliams, 393 F.3d at 801; Masterson, 363 F.3d at 738; Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence. Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992); Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988). The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). See also Steed, 524 F.3d at 876 (citing Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)). The ALJ need only acknowledge and consider those factors. See id.

Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. See Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b)-(e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy. See Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006); Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)). The Commissioner must first prove that the claimant retains the RFC to perform other kinds of work. See Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857. The Commissioner has to prove this by substantial evidence. Warner v. Heckler, 722 F.2d 428, 431 (8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. See Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert (VE) may be used. An ALJ posing a hypothetical to a VE is not required to include all of a plaintiff's limitations, but only those which he finds credible. See Goff, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical."); Rautio, 862 F.2d at 180. Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the plaintiff's subjective complaints of pain for legally sufficient reasons. See Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006); Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell v. Sullivan, 892 F.2d 747, 750 (8th Cir. 1989).

### III.
### DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. See Onstead, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm her decision as long as there is substantial evidence in favor of the Commissioner's position. See Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

Plaintiff, was born on June 2, 1989, and was twenty-three years of age at the time the ALJ issued her decision. He alleged disability due to

hemophilia, and testified at the hearing that, depending on what he did on any given day, his ankles, knees, elbows, or hips became swollen; if he walked too much, carried things that were too heavy, or "just [did] too much activity at once," he became unable to move his ankles, elbows, or knees due to swelling; when his ankles swelled, he propped them up and put ice packs on them; the swelling made it difficult for him to sleep; when his ankles became swollen, he had difficulty walking even ten feet; his elbows became swollen at least once a week; the elbow swelling was triggered by his walking around the house or lifting anything heavy; when his elbows became swollen, he kept them elevated for half a day; and, when his joints became swollen, he had difficulty dressing himself. Plaintiff also testified that he took Factor VIII Recombinant three times per week through an IV for his hemophilia, and that he took an additional dose of that medication when he had a bleed.[3] (Tr. 31-40).

The ALJ found that Plaintiff met the insured status requirements through March 31, 2009; that he had not engaged in substantial gainful activity since July 1, 2008; that he had the severe impairment of hemophilia;

_____

[3]  Bleeds resulting from hemophilia include external bleeds, such as cuts and nosebleeds, and internal bleeds, where blood pools around joints or large muscles. See NIH National Heart, Lunch, and Blood Institute: What are the Signs and Symptoms of Hemophilia, http://www.nhlbi.nih.gov/health/health-topics/topics/hemophilia/signs.html. (last visited November 6, 2014).

that Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment; that Plaintiff had the RFC to perform light work except that he could frequently push and pull with all extremities, and should avoid climbing ropes, ladders, or scaffolds, and avoid vibration; that based on the Dictionary of Occupational Titles (DOT) and the testimony of a VE, Plaintiff could perform his past relevant work as a driver; and that, therefore, Plaintiff was not disabled within the meaning of the Act. (Tr. 12-21).

Plaintiff contends that the ALJ's decision is not supported by substantial evidence because: Upon evaluating Plaintiff's credibility, the ALJ made insufficient findings regarding his testimony; the ALJ failed to address specific statements regarding Plaintiff's conditions and limitations and explain why she found Plaintiff's statements not credible; the ALJ failed to sufficiently cite medical or other evidence supporting her credibility determination; and the ALJ incorrectly found that Plaintiff's job as a driver constituted past relevant work. For the following reasons, the court finds that Plaintiff's arguments lack merit and that the ALJ's decision is based on substantial evidence.

## A.    Plaintiff's Credibility:

The court will first consider the ALJ's consideration of Plaintiff's credibility, as the ALJ's evaluation of Plaintiff's credibility was essential to the ALJ's determination of other issues. See Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005)); 20 C.F.R. §§ 404.1545, 416.945 (2010). As set forth more fully above, the ALJ's credibility findings should be affirmed if they are supported by substantial evidence on the record as a whole; a court cannot substitute its judgment for that of the ALJ. See Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Hutsell, 892 F.2d at 750; Benskin, 830 F.2d at 882.

To the extent that the ALJ did not specifically cite Polaski, other case law, and/or Regulations relevant to a consideration of Plaintiff's credibility, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence. Randolph v. Barnhart, 386 F.3d 835, 842 (8th Cir. 2004); Wheeler v. Apfel, 224 F.3d 891, 895 n.3 (8th Cir. 2000); Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995). Additionally, an

ALJ need not methodically discuss each <u>Polaski</u> factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for the ALJ to make. <u>See</u> <u>Lowe v. Apfel</u>, 226 F.3d 969, 972 (8th Cir. 2000). <u>See also</u> <u>Tucker v. Barnhart</u>, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each <u>Polaski</u> factor as long as the analytical framework is recognized and considered."); <u>Strongson</u>, 361 F.3d at 1072; <u>Brown v. Chater</u>, 87 F.3d 963, 966 (8th Cir. 1996).

In any case, "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." <u>Pearsall v. Massanari</u>, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." <u>Gregg v. Barnhart</u>, 354 F.3d 710, 714 (8th Cir. 2003). <u>See also</u> <u>Halverson v. Astrue</u>, 600 F.3d 922, 932 (8th Cir. 2010); <u>Cox v. Barnhart</u>, 471 F.3d 902, 907 (8th Cir. 2006). For the following reasons, the court finds that the reasons offered by the ALJ in support of her credibility determination are based on substantial evidence.

First, the ALJ considered Plaintiff's medical records and that they did not support his claims regarding disabling pain and swelling. <u>See</u> 20 CFR § 404.1529(c)(2) (agency will consider "objective medical evidence" when

evaluating symptoms); <u>Gonzales v. Barnhart</u>, 465 F.3d 890, 895 (8th Cir. 2006) (ALJ may find claimant's subjective pain complaints are not credible in light of objective medical evidence to the contrary). <u>Ramirez v. Barnhart</u>, 292 F.3d 576 (8th Cir. 2002) (ALJ is entitled to make a factual determination that a claimant's subjective pain complaints are not credible in light of objective medical evidence) (citing 20 C.F.R. §§416.908, 416.929).

In this regard, when Plaintiff was hospitalized, on July 27, 2008, complaining of headache, Plaintiff's extremities were non-tender; he had normal range of motion (ROM); and he did not complain of musculoskeletal pain.  (Tr. 285, 287).  Upon discharge, on July 28, 2008, Plaintiff had no evidence of bleeding or signs of inflammation; he had no clubbing, cyanosis, or edema in his extremities; he had equal grip bilaterally; and he had no headache.  (Tr. 292).  Upon admission to the hospital, on February 22, 2010, Plaintiff had normal range of motion in his neck and body and no edema, and he did not complain of musculoskeletal pain.  (Tr. 301-305).  On March 14, 2010, when Plaintiff presented for penile discharge, examination showed his neck was supple; he had normal ROM in his neck and body; and he exhibited no edema or tenderness.  (Tr. 319-30).

When Plaintiff presented to Ganesh C. Kudva, M.D., on July 19, 2010, for congenital hemophilia, Dr. Kudva reported, that, despite Plaintiff's taking

Recombinant three times a week, he was still experiencing joint bleeds; that Plaintiff had severe inflammation in both elbows, ankles, and knees; that Plaintiff had instability of the left knee in the past, but that his other joints were well preserved; that Plaintiff denied fatigue, fever, chills, and painful urination; that Plaintiff had no edema in his extremities; that he had a mild to moderate restriction of movement in both ankles; that Plaintiff's left elbow extension was limited to fifteen degrees short of full extension; and that all of Plaintiff's other joints were normal. Dr. Kudva opined that Plaintiff had "moderate (clinically severe) congenital hemophilia A with breakthrough bleeds," and severe hemophilic arthropathy in both knees, elbows, and noted that he increased Plaintiff's dosage for Factor VIII Recombinant from 1,500 units to 2,600 units, three times per week. (Tr. 252-54).

Pursuant to a consultive examination conducted at the request of the State agency, Raymond Leung, M.D., reported, on April 8, 2011, that Plaintiff developed mild pain during the exam; Plaintiff walked with a minimal limp and was able to walk fifty feet unassisted; Plaintiff was able to tandem walk and to hop on his right leg, but not on his left leg; Plaintiff was unable to heal walk, but was able to toe walk and squat; Plaintiff had swelling in his left elbow and in both knees; he had decreased range of motion in both ankles and no muscle atrophy or spasms; Plaintiff could

oppose his thumb to each finger in both hands; Plaintiff's right arm strength was "5/5" and his right leg, left arm, and left leg strength were "4+/5"; Plaintiff had no extremity peripheral edema; and Plaintiff had decreased range of motion only at the ankles. (Tr. 258-60).

When Plaintiff presented to the hospital, on June 1, 2011, complaining of wheezing, sinus congestion, nausea, and diarrhea for two days, Plaintiff had normal ROM in his body and no edema. (Tr. 333-37). On June 10, 2011, when he again presented to the emergency room, Plaintiff had normal ROM in his body, and he did not have edema, tenderness, stiffness, muscle pain, back pain, or joint pain. (Tr. 350-57).

When Plaintiff was seen for a hematology follow-up evaluation at St. Louis University Hospital, on January 16, 2012, he reported having nosebleeds six or seven times in the past six months; that the nosebleeds stopped when Plaintiff applied pressure for two or three minutes[4]; and that he

---

[4] The ALJ incorrectly noted that Plaintiff reported that his joint swelling and pain resolved with pressure after one or two minutes. (Tr. 18) The medical records indicate that Plaintiff reported that his nosebleeds (described as epistaxis) rather than his joint swelling and pain resolved with pressure after one or two minutes. (Tr. 361) To the extent the ALJ incorrectly interpreted this medical report, the court finds that this error was not prejudicial in light of substantial evidence supporting the ALJ's decision. See Casey v. Astrue, 503 F.3d 687, 695 (8th Cir. 2007) (holding that an ALJ's mistake in quoting a medical report was harmless error when viewed in the context of the whole record).

had pain and bruising in his bilateral upper extremities and ankles. Upon examination, it was noted that Plaintiff had edema in his ankles and elbows and bleeding underneath the skin in his bilateral upper extremities. It was also noted that Plaintiff had not required any extra infusions since his last visit. Plaintiff was instructed to continue taking Factor VIII Recombinant three times per week, 2,600 units, and to try using a humidifier and nasal spray. (Tr. 361-62).

Second, the ALJ considered Plaintiff's work history. Indeed, Plaintiff's Work History report showed that Plaintiff's only reported period of employment prior to his alleged onset date was for six months, as a driver for a landscaping company. (Tr. 181). Also, Plaintiff testified that he had been employed as a driver for an air duct cleaning company for a year. (Tr. 41-42). Further, Plaintiff's wage history reflects that he earned $6,152.09 in 2006, $3,959.40 in 2007, and $195.00 in 2008. (Tr. 168).

A long and continuous past work record with no evidence of malingering is a factor supporting credibility of assertions of disabling impairments. See Allen v. Califano, 613 F.2d 139, 147 (6th Cir. 1980). For the same reason, an ALJ may discount a claimant's credibility based upon her poor work record. See Ellis v. Barnhart, 392 F.3d 988, 996 (8th Cir. 2005) (ALJ may properly consider claimant had not worked for several years before

filing SSI application); Ownbey v. Shalala, 5 F.3d 342, 344 (8th Cir. 1993).

See also Fredrickson v. Barnhart, 359 F.3d 972, 976 (8th Cir. 2004) (ALJ properly found claimant not credible due in part to his sporadic work record reflecting relatively low earnings and multiple years with no reported earnings); Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996); McClees v. Shalala, 2 F.3d 301, 303 (8th Cir. 1993). Work history is only factor among many for an ALJ to consider. See Curran-Kicksey v. Barnhart, 315 F.3d 964, 969 (8th Cir. 2003).

Third, the ALJ found that Plaintiff's complaints of disabling pain and swelling were inconsistent with statements he made to medical professionals regarding his condition. Contradictions between a claimant's sworn testimony and what he actually told physicians weighs against the claimant's credibility. See Karlix v. Barnhart, 457 F.3d 742, 748 (8th Cir. 2006). See also Travis v. Astrue, 477 F.3d 1037, 1042 (8th Cir. 2007) ("An ALJ may not disregard subjective complaints merely because there is no evidence to support the complaints, but may disbelieve subjective reports because of inherent inconsistencies or other circumstances.") (internal quotation and citation omitted). In this regard, the ALJ noted that Plaintiff denied fatigue and pain when he saw his doctors, which conflicted with his allegations at the hearing of pain so severe it prevented him from lifting, sitting, and standing.

(Tr. 17, 37-38, 361). Additionally, the ALJ considered that Plaintiff did not report the need to elevate his joints for several hours a day to his providers. (Tr. 18, 361). Also, in June 2011, Plaintiff denied any recent bleeding difficulties or issues. (Tr. 333). Further, contrary to Plaintiff's testimony that he had to take extra doses of his medication every week, Plaintiff told his doctor, at St. Louis University Hospital, in January 2012, that he had not required any extra dosages since his last visit. (Tr. 18-19, 362). The court notes that Plaintiff did not assert or establish a significant mental impairment, which might explain inconsistencies between his testimony and the record.

Fourth, the ALJ found that Plaintiff's sporadic medical treatment was inconsistent with his claims of disabling pain and swelling. (Tr. 17, 249, 263-60). Indeed, Plaintiff testified that he saw his doctor yearly. When asked why he did not see the doctor more frequently, Plaintiff responded that there was nothing else the doctor could do for him aside from increasing the dosage of medication he received. (Tr. 36). Failure to seek medical assistance for alleged physical impairments contradicts subjective complaints of disabling conditions. See Harris v. Barnhart, 356 F.3d 926 (8th Cir. 2004) ("The history of [Plaintiff's] treatment … also supported the ALJ's credibility determination."); Singh v. Apfel, 222 F.3d 448, 453 (8th Cir. 2000) ("A Claimant's allegations of disabling pain may be discredited by evidence that

the Claimant has received minimal medical treatment and/or has taken only occasional pain medications."); Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997) ("Finally, [Plaintiff's] failure to seek medical assistance for her alleged physical and mental impairments contradicts her subjective complaints of disabling conditions and supports the ALJ's decision to deny benefits."); Ostronski v. Chater, 94 F.3d 413, 419 (8th Cir. 1996) ("[Claimant's] complaints of disabling pain and functional limitations are inconsistent with her failure . . . to seek regular medical treatment for her symptoms.").

Fifth, the ALJ found that Plaintiff made inconsistent statements to his medical providers regarding his alcohol and drug use, telling some providers he used them and others that he did not. (Tr. 18, 253, 321, 351). Also, Plaintiff's testimony that he lived alone was inconsistent with statements that he made to medical professionals and a report indicating that he lived in a shared home. (Tr. 29, 39-40, 196, 253). See Baldwin v. Barnhart, 349 F.3d 549, 558 (8th Cir. 2003) ("These inconsistencies [regarding Plaintiff's alcohol and illicit drug use] support the ALJ's decision to discount Baldwin's credibility and subjective complaints of pain.").

Sixth, the ALJ considered that no treating physician who had ever examined Plaintiff had determined that he was totally disabled from all forms

of work activity. See Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000) ("We find it significant that no physician who examined Young submitted a medical conclusion that she is disabled and unable to perform any type of work.") (citing Brown v. Chater, 87 F.3d 963, 964-65 (8th Cir. 1996)). See also Eichelberger, 390 F.3d at 590 (ALJ could find claimant not credible based in part on fact that no physician imposed any work related restrictions). Notably, when Plaintiff was discharged from the hospital, in July 2008, he was not given any restrictions other than he was told not to drive while taking pain medications. (Tr. 275).

Seventh the ALJ considered that Plaintiff failed to comply with treatment recommendations. (Tr. 16-19). In this regard, when Plaintiff presented at the hospital, on February 22, 2010, he had not been taking Recombinant, as prescribed, to treat his hemophilia. (Tr. 301-305). See Eichelberger, 390 F.3d at 589 (holding that the ALJ properly considered that the plaintiff cancelled several physical therapy appointments and that no physician imposed any work-related restrictions on her) (citing Brown v. Chater, 87 F.3d 963, 965 (8th Cir. 1996) (claimant's failure to comply with prescribed medical treatment and lack of significant medical restrictions is inconsistent with complaints of disabling pain). See also Wildman v. Astrue,

596 F.3d 959, 968-69 (8th Cir. 2010) (it is permissible for ALJ to consider claimant's non-compliance with prescribed medical treatment).

Eighth, when Plaintiff was hospitalized, he was hospitalized for conditions other than his allegedly disabling hemophilia. (Tr. 15-19). Indeed, when Plaintiff was admitted to the hospital, on July 27, 2008, it was for headache, which was resolved upon his discharge the next day (Tr. 264, 292); when Plaintiff presented at Mercy Hospital, on February 22, 2010, he complained of blood in his urine and chills (Tr. 301-305); when Plaintiff presented to the hospital, on March 14, 2010, complaining of penile discharge, he was diagnosed with chlamydia (Tr. 319-30); when Plaintiff presented to Mercy Hospital, on June 1, 2011, it was for shortness of breath, wheezing, sinus congestion, nausea, and diarrhea (Tr. 333-37); and, on June 11, 2011, Plaintiff presented at Mercy Hospital complaining of shoulder pain and heartburn. (Tr. 250-57).

Ninth, as stated above, when he presented to the hospital, in June 2011, he told hospital staff that he had been working outside and that the weather was affecting his breathing. (Tr. 333-37). "Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility." Johnson v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001).

Tenth, the ALJ considered that Plaintiff failed to list his employment with Buss Air Duct and Carpet Leaning, and that this indicated Plaintiff was "willing to fail to disclose information, fully and accurately, in order to appear disabled." (Tr. 18).

Eleventh, the ALJ considered that Plaintiff improved with treatment. (Tr. 18). Indeed, when Plaintiff presented to the hospital with a headache, in July 2008, his pain was controlled during the hospitalization. (Tr. 292). When Plaintiff was discharged from Mercy Hospital, in June 2011, he was "feeling much better" and had no complaints. (Tr. 353). Conditions which can be controlled by treatment are not disabling. See Renstrom v. Astrue, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting Brown v. Astrue, 611 F.3d 941, 955 (8th Cir. 2010)); Davidson v. Astrue, 578 F.3d 838, 846 (8th Cir. 2009); Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009); Schultz v. Astrue, 479 F.3d 979, 983 (8th Cir. 2007) (holding that if an impairment can be controlled by treatment, it cannot be considered disabling).

Twelfth, despite Plaintiff's assertion to the contrary, the ALJ gave good reasons for discrediting Plaintiff's allegations regarding the severity of his symptoms. See Renstrom v. Astrue, 680 F.3d 1057, 1067 (8th Cir. 2012) ("Because the ALJ gave good reasons for discounting [Plaintiff's] credibility, we defer to the ALJ's credibility findings.").

**B.    The ALJ's RFC Determination:**

The Regulations define RFC as "what [a claimant] can do" despite his or her "physical or mental limitations."   20 C.F.R. § 404.1545(a).   "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments."   Lauer v. Apfel, 245 F.3d 700, 703 (8th Cir. 2001).   "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'"   Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)).   See also Myers v. Colvin, 721 F.3d 521, 526 (8th Cir. 2013).

To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant's impairments to determining the kind of work the claimant can still do despite his or her impairments. Anderson v. Shalala, 51 F.3d. 777, 779 (8th Cir. 1995).   Although assessing a claimant's RFC is primarily the responsibility of the ALJ, a "'claimant's residual functional capacity is a medical question.'"   Lauer, 245 F.3d at 704 (quoting Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000)).   The Eighth Circuit clarified, in Lauer, 245 F.3d at 704, that "'[s]ome medical evidence,'

Dykes v. Apfel, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam), must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace,' Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000)." Thus, an ALJ is "required to consider at least some supporting evidence from a professional." Id. See also Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010) ("The ALJ bears the primary responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC."); Eichelberger, 390 F.3d at 591.

Although the ALJ in the matter under consideration found Plaintiff's allegations less than credible, she nonetheless included limitations in Plaintiff's RFC which she found credible. Thus, the ALJ limited Plaintiff to light work which requires lifting no more than 20 pounds at a time with frequent lifting or carrying of objects up to 10 pounds." 20 C.F.R. § 404.1567(b). Additionally, "[s]ince frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." Social Security Regulation (SSR) 83-10, 1983 WL 31251, at *6 (Dec. 12, 1983). Further, the ALJ accommodated Plaintiff's assertions about his limitations by finding that Plaintiff was limited to jobs

which enabled him to avoid climbing ropes, ladders, or scaffolds and avoiding vibration. (Tr. 15).

On the other hand, the ALJ did not include in Plaintiff's RFC limitations which she found not credible. Thus, the ALJ did not include limitations in Plaintiff's RFC in regard to his walking, standing, or sitting. (Tr. 15-16). Indeed, the ALJ's doing so was consistent with records of July 2008 reflecting that Plaintiff had no clubbing, cyanosis, or edema in his extremities, had equal grip bilaterally and normal range of motion, and did not complain of musculoskeletal pain. (Tr. 301-305). The ALJ's RFC determination was also consistent with Dr. Kudva's reporting, in July 2010, that Plaintiff had no extremity edema, moderate restriction of movement in the ankles, and limited left elbow extension, and that all of his other joints were normal (Tr. 253), and with Dr. Leung's reporting, in April 2011, that Plaintiff could walk fifty feet unassisted, had 5/5 strength in his right arm, had strength of "4+/5" in both legs, could squat, had no lower extremity peripheral edema, and had decreased ROM only in his ankles (Tr. 258, 260). It was additionally consistent with June 2011 hospital records reflecting Plaintiff had no edema, no tenderness, and no muscle, back or joint pain. (Tr. 350-57).

The court notes that while it was reported that Plaintiff had ankle and elbow edema on January 16, 2012, this date was less than twelve months prior to the ALJ's issuing her opinion in July 2012. Thus, even if Plaintiff's condition was more severe after January 2012, he did not present evidence that his impairment lasted or was expected to last for a continuous period of at least twelve months. 20 C.F.R. § 414.909 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the duration requirement."). Moreover, Plaintiff's being found disabled as of October 13, 2013, pursuant to a subsequent application (Doc. 26-1) does not establish he was disabled for the relevant period under consideration by this court. Cf. Cunningham v. Apfel, 222 F.3d 496, 500 n.4 (8th Cir. 2000) (finding moot a claimant's request for remand based on an award of benefits pursuant to a subsequent application); Hefner v. Colvin, 2013 WL 4482759, at *13-14 (E.D. Mo Aug. 19, 2013) (rejecting claimant's argument that a recent favorable determination on a subsequent application established disability for the relevant period; subsequent decision did not affect the decision in the matter under consideration as it did not relate to the period considered by the ALJ in the matter under consideration).

Further, to the extent Plaintiff argues that the ALJ did not provide sufficient detail regarding her credibility findings to support her RFC determination (Doc. 19 at 14-15), as fully set forth above, the ALJ did give sufficient reasons for finding Plaintiff not fully credible. To the extent Plaintiff argues that the ALJ's RFC determination is inconsistent with Dr. Leung's records (Doc. 19 at 12), Dr. Leung noted that *Plaintiff reported* he was able to walk a half block and lift ten pounds; Dr. Leung did not make such a finding himself based on examination (Tr. 258) (stating "history is given by claimant"). See Renstrom v. Astrue, 680 F.3d 1057, 1064-65 (8th Cir. 2012) (affirming where ALJ did not give controlling weight to opinion of treating doctor, where doctor's opinion was largely based on the claimant's subjective complaints).

To the extent Plaintiff argues that the ALJ failed to provide a sufficient narrative discussion to support her RFC determination (Doc. 19 at 9-13), an ALJ is not required to provide each limitation in the RFC immediately followed by a list of the specific evidence supporting this limitation. To require the ALJ to do so would not only undermine the Eighth Circuit's directive that a claimant's RFC be based on "all of the relevant evidence," but would result in duplicative discussions of the same evidence. See McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000); see also Barnhart v.

Thomas, 540 U.S. 20, 28-29 (2003) ("[T]he Social Security hearing system is probably the largest adjudicative agency in the western world [and] the need for efficiency is self-eviden[t].") (internal quotation and punctuation marks omitted).  The court finds that the ALJ's decision reflects that she thoroughly considered all of Plaintiff's alleged impairments, in detail.

To the extent Plaintiff argues the ALJ's RFC determination is not supported by substantial evidence because it does not track a specific medical opinion (Doc. 19 at 9-10), an ALJ is not required to base her RFC determination on a specific medical opinion.  Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011) (quoting Schmidt v. Astrue, 496 F.3d 833, 845 (7th Cir. 2007) ("the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians.").  Rather, "[i]t is the ALJ's function to resolve conflicts among the various treating and examining physicians." Tindell v. Barnhart, 444 F.3d 1002, 1004 (8th Cir. 2006) (quoting Vandenboom v. Barnhart, 421 F.3d 745, 749-50 (8th Cir. 2005) (internal marks omitted).  See also Renstrom v. Astrue, 680 F.3d  1057, 1065 (8th Cir. 2012) ("Dr. Agre's finding that Renstrom was 'totally disabled' gets no deference because it invades the province of the Commissioner to make the ultimate disability determination.").

In conclusion, the court finds that, consistent with the Regulations and case law, the ALJ moved analytically, from ascertaining the true extent of Plaintiff's impairments in order to determine the kind of work Plaintiff could perform despite his impairments. Only after doing so, did the ALJ find that Plaintiff could perform light work except that he could only frequently push and pull with all extremities, and should avoid climbing ropes, ladders, or scaffolds, and avoid vibration. The court further finds that the ALJ's RFC determination is based on substantial evidence and is consistent with the Regulations and case law.

**D.     Plaintiff's Past Relevant Work:**

Plaintiff testified that he worked as a driver for about one year (Tr. 41-42), although he initially reported he worked in that job for about six months (Tr. 181). He further testified that he did not have to do any lifting in that job; all he did was drive; and he was let go from his driving job because of his "joints and [] pains and all that stuff." (Tr. 41). Plaintiff argues that the ALJ erred by classifying his work as a driver as past relevant work. (Doc. 13-14).

Notably, discussed above, the ALJ's RFC determination is based on substantial evidence. The ALJ submitted a hypothetical to a VE which described a person of Plaintiff's age and with his RFC, education, and work

experience. (Tr. 43). The RFC which the ALJ posed to the VE included the Plaintiff's limitations as found credible by the ALJ. See Renstrom v. Astrue, 680 F.3d 1057, 1067 (8th Cir. 2012); Martise, 641 F.3d at 927 ("The ALJ's hypothetical question to the vocational expert needs to include only those impairments that the ALJ finds are substantially supported by the record as a whole.") (quoting Lacroix, 465 F.3d at 889); Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010) ("[T]he ALJ was not obligated to include limitations from opinions he properly disregarded.").

The VE testified that Plaintiff could perform his past relevant work as a driver, as he actually performed it. (Tr. 43). The VE also testified that, in addition to his past relevant work, there were other jobs in the national economy which Plaintiff could perform, such as office mail clerk and unarmed security guard. (Tr. 44-45). See Martise, 641 F.3d at 927 ("Based on our previous conclusion ... that 'the ALJ's findings of [the claimant's] RFC are supported by substantial evidence,' we hold that '[t]he hypothetical question was therefore proper, and the VE's answer constituted substantial evidence supporting the Commissioner's denial of benefits.'") (quoting Lacroix, 465 F.3d at 889); Robson v. Astrue, 526 F.3d 389, 392 (8th Cir. 2008) (holding that a VE's testimony is substantial evidence when it is based on an accurately phrased hypothetical capturing the concrete consequences of

a claimant's limitations); Wingert v. Bowen, 894 F.2d 296, 298 (8th Cir. 1990).

The Social Security Regulations define "past relevant work" as "work experience [which] ... was done within the last fifteen years, lasted long enough for [the claimant] ... to learn to do it, and was *substantial gainful activity*." 20 C.F.R. § 404.1565(a) (emphasis added). If the claimant is found to be able to perform the duties of his past relevant work, then he is considered not disabled and therefore ineligible for benefits. See Bowen v. City of New York, 476 U.S. 467, 471 (1986); Martin v. Sullivan, 901 F.2d 650, 652 (8th Cir. 1990).

As relevant, 20 C.F.R. § 404.1574(a) provides:

(1) Your earnings may show you have done substantial gainful activity. Generally, in evaluating your work activity for substantial gainful activity purposes, our primary consideration will be the earnings you derive from the work activity. We will use your earnings to determine whether you have done substantial gainful activity unless we have information from you, your employer, or others that shows that we should not count all of your earnings. The amount of your earnings from work you have done (regardless of whether it is unsheltered or sheltered work) may show that you have engaged in substantial gainful activity. Generally, if you worked for substantial earnings, we will find that you are able to do substantial gainful activity. However, the fact that your earnings were not substantial will not necessarily show that you are not able to do substantial gainful activity.

20 C.F.R. § 404.1574(c) provides:

(4) If you worked between 3 and 6 months. We will consider work that lasted longer than 3 months to be an unsuccessful work attempt if it ended, or was reduced below substantial gainful activity earnings level, within 6 months because of your impairment or because of the removal of special conditions which took into account your impairment and permitted you to work and--

(i) You were frequently absent from work because of your impairment;

(ii) Your work was unsatisfactory because of your impairment;

(iii) You worked during a period of temporary remission of your impairment; or

(iv) You worked under special conditions that were essential to your performance and these conditions were removed.

(5) If you worked more than 6 months. We will not consider work you performed at the substantial gainful activity earnings level for more than 6 months to be an unsuccessful work attempt regardless of why it ended or was reduced below the substantial gainful activity earnings level.

Further, 20 C.F.R. § 404.1560 states, in relevant, part in regard to a claimant's ability to perform past relevant work:

(b) Past relevant work ...

(2) Determining whether you can do your past relevant work. We will ask you for information about work you have done in the past. .. . . . We may use the services of vocational experts or vocational specialists, or other resources, such as the "Dictionary of Occupational Titles" [DOT] . . . , to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity. A vocational expert or specialist may offer relevant evidence within his or her

expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy. Such evidence may be helpful in supplementing or evaluating the accuracy of the claimant's description of his past work. In addition, a vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy.

(3) If you can do your past relevant work. If we find that you have the residual functional capacity to do your past relevant work, we will determine that you can still do your past work and are not disabled. We will not consider your vocational factors of age, education, and work experience or whether your past relevant work exists in significant numbers in the national economy. . . .

(c) Other work.

(1) If we find that your residual functional capacity is not enough to enable you to do any of your past relevant work, we will use the same residual functional capacity assessment we used to decide if you could do your past relevant work when we decide if you can adjust to any other work. . . . .

(2) In order to support a finding that you are not disabled at this fifth step of the sequential evaluation process, we are responsible for providing evidence that demonstrates that *other work exists in significant numbers in the national economy that you can do, given your residual functional capacity and vocational factors*. We are not responsible for providing additional evidence about your residual functional capacity

> because we will use the same residual functional capacity assessment that we used to determine if you can do your past relevant work.

(emphasis added).

Thus, if Plaintiff worked as a driver for more than six months, the ALJ could have found that Plaintiff's work as a driver was past relevant work, in the event Plaintiff had also earned sufficient income in that job for it to qualify as substantial gainful activity. 20 C.F.R. §§ 404.1560(b)(2) & (3), 404.1574(a)&(c). Significantly, as stated above in regard to Plaintiff's credibility, Plaintiff earned $6,152.09 in 2006 and $4,959.40 in 2007.

According to http://www.socialsecurity.gov/oact/COLA/sga.html, the substantial gainful activity level for 2006 was $10,320, and for 2007 it was $10,800. As such, the court finds, in agreement with Plaintiff, that substantial evidence does not support the ALJ's determination that Plaintiff's job as a driver was past relevant work.

Nonetheless, even if the ALJ erred in finding that Plaintiff's work as a driver was past relevant work, the ALJ found, in the alternative, based on the VE's testimony and the ALJ's independent consideration of the DOT, that there was other work in the national economy which Plaintiff could perform, based on his age, work history, education, and RFC. The court finds, therefore, that the ALJ's determination, in this regard, is based on substantial

evidence.  See Martise, 641 F.3d at 927.  As such, the court finds that the ALJ's ultimate finding that Plaintiff was not disabled through the date of her decision is based on substantial evidence and that the decision is consistent with the Regulations and case law.

**IV.**
**CONCLUSION**

For the reasons set forth above, the court finds that substantial evidence on the record as a whole supports Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in his Complaint, Brief in Support of Complaint, and Reply is **DENIED** (Docs. 1, 19, 26).

Dated this 9th day of February 2015.

/s/ Noelle C. Collins
United States Magistrate Judge